**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Aaron Morris and Casey Morris, | ) ) | |
| Plaintiffs, | ) ) | No. CV-07-1837-PHX-PGR |
| vs. | ) ) | |
| United States of America, | ) ) | ORDER |
| Defendant. | ) ) | |

Pending before the Court's is Defendant's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (doc. #32). Having considered the parties' memoranda in light of the evidence of record, the Court finds that this action should be dismissed for lack of subject matter jurisdiction.[1]

This two-count personal injury action filed pursuant to the Federal Tort Claims Act (FTCA) stems from Aaron Morris having slipped and fallen in the recently damp mopped lobby of the Social Security Administration's building in Casa Grande, Arizona on October 4, 2005. Count One is Aaron Morris' personal

---

[1]
The Court notes that it has dispensed with oral argument because the Court does not believe it would aid the decisional process.

The Court further notes that it has intentionally considered only those arguments raised by the parties in their memoranda that the Court believes are necessary to the resolution of the pending motion.

injury claim and Count Two is his wife Casey Morris' loss of consortium claim.

Evidence of Record

(1) The Lease

The Social Security Administration (SSA), through the General Services Administration (GSA), leases the entire building from a local law firm.[2]  The lease[3], dated April 30, 1997, provides in part that "[t]he Lessor is responsible for the total maintenance and repair of the leased premises (¶ 7.5).  Paragraph 7.8 of the lease, entitled "Janitorial Services", provides in part that:

> Cleaning is to be performed after tenant working hours unless daytime cleaning is specified as a special requirement elsewhere in this solicitation.  The Lessor shall maintain the lease premises, including outside areas in a clean condition and shall provide supplies and equipment.  The following schedule describes the level of services intended.  Performance will be based on the Contracting Officer's evaluation of results, not the frequency of method or performance.

The janitorial-related provision specifies what cleaning is to be done on a daily basis, three times a week, weekly, every two weeks, monthly, every two months, three times a year, twice a year, annually, every two years, every five years, and as required.[4]

---

[2]

Although the lessor's name on the lease is McCarville, Cooper & Vasquez, P.C., some of the exhibits submitted by the parties refer to the building owner and/or lessor as being the Fourth and Marshall Group, Ltd.  Since the parties have not explained the distinction between the two entities, the Court assumes for the purposes of the pending motion that any distinction between them is immaterial.

[3]

The record contains only a very small portion of the lease.

[4]

As an example, the portion of ¶ 7.8 specifying what cleaning is to be done on a daily basis states:

1   (2) Stephen Cooper

2       Stephen Cooper, an attorney who apparently has an ownership interest in

3 the lessor, testified at his deposition that Rachel Valenzuela, the building's janitor,

4 was an employee of Fourth and Marshall Group[5], that she had been an employee

5 of the lessor since the SSA occupied the building in 1997, that she was paid

6 monthly by the lessor for her janitorial duties, and that the lessor supplied her with

7 cleaning supplies and provided her with the lease information concerning what

8 items in the building were to be cleaned.  Cooper further testified that the lessor

9 had the ability to control Valenzuela's hours and days, and somewhat had the

10 ability to control her duties in the sense that the GSA lease specified the scope of

11 janitorial services to be provided and had restrictions on when the janitor could

12 access the building to clean.  As to this last point, Cooper testified that

13 Valenzuela could not clean without SSA employees being present in the building

14

15         Empty trash receptacles and clean ashtrays.  Sweep entrances,
lobbies and corridors.  Spot sweep floors and spot vacuum carpets.

16         Clean drinking fountains.  Sweep and damp mop or scrub toilet
rooms.  Clean all toilet fixtures and replenish toilet supplies. Dispose

17         of all trash and garbage generated in or about the building.  Wash
inside and out or steam clean cans used for collection of food

18         remnants from snack bars and vending machines.  Dust horizontal
surfaces that are readily available and visibly require dusting. Spray

19         buff resilient floors in main corridors, entrances and lobbies, clean

20         elevators and escalators, remove carpet satins.  Police sidewalks,
parking areas and driveways. Sweep loading dock areas and

21         platforms.

22         5

23         The plaintiffs filed a personal injury action in the Pinal County Superior
Court in 2006 stemming from Morris' fall.  One of the named defendants was the

24 Fourth and Marshall Group, Ltd., together with two Cooper-related law firms. The
case was settled in 2007.  Nothing is said in this action about the terms of that

25 settlement or of what remaining damages the plaintiffs have that were not

26 compensated for in the earlier action.

and that she generally completed her cleaning tasks in the mornings prior to the building being opened to the public, although she had sometimes in the past been able to change her cleaning hours to late in the afternoon without any involvement by the lessor by getting permission directly from the SSA's on-site manager.

(3) Aaron Morris

According to Morris' affidavit and the testimony of others, on the morning of the accident, Morris, an electrician with Casa Tech, was let into the building by a SSA employee so that he and some co-workers could do some computer-related cabling work for the SSA before the building opened to the public. While he was working in the building, Rachel Valenzuela mopped the lobby floor. Morris subsequently fell in the lobby and injured his knee. He stated that after he fell he noticed that the floor was wet, and that prior to falling, he had not noticed any signs or safety cones warning that the floor had just been mopped. Morris further stated that the building's manager's office contained monitors that surveilled the interior areas of the building.

(4) Rachel Valezuela

Rachel Valezuela, the janitor, testified that Fourth and Marshall supplies her with her cleaning materials and equipment, that she is not allowed in the building without SSA personnel being present, that she has to knock on the door when she arrives and a SSA employee has to let her in because she does not have a key to the building, that she does not sign in or report to anyone when she enters the building nor does she sign out or tell anyone when she leaves (other than occasionally saying good-bye), and that she does not know who let her in the building on the morning of the accident. She also testified that although she

normally cleaned in the mornings before the building opened, she could clean in the afternoons instead if necessary when asked to do so by the SSA supervisor or because of her personal schedule and that she had done so on some occasions before Morris' accident, and that on those days she would clean the lobby after the building closed to the public at 4:00 p.m.  She further testified that she never cleans the lobby when there is anyone in the lobby or when there is anyone in the building other than SSA people.

She further testified that when she entered the building on the morning of the accident she did not know that Morris or his co-workers were in the building because no one had told her that they would be there, that had she known there were going to be non-SSA workers in the building she would have asked the SSA supervisor if she could skip working that day or to not clean the lobby, that upon seeing two or three workers in the building that morning she did not recognize she started cleaning from the back of the building instead of the front, that at the time she started cleaning the lobby she thought the workers had already left the building, although she thought that because it was getting close to the 9:00 a.m. building opening time and not because she saw them leave or because everyone had told her that they had finished their work, that she did not put out any warning sign after mopping the lobby on the morning of the accident, and that Morris could only have entered the lobby prior to falling by going past her large utility cart that held her bright yellow mop bucket that had the word "caution" on it.  She further testified that it takes her about 15 minutes to clean the lobby, of which 8-10 minutes or less involves mopping the floor.

(5) Jayn Corral

Jayn Corral became the SSA's on-site manager some three or four months

prior to the accident.  She testified that she hired Casa Tech to do some electrical

work in the building for the SSA, which included work in the lobby, that she

scheduled the work to be done on the morning of the accident prior to the building

being opened, that she knew when she scheduled the electrical work that there

was the potential for Rachel Valenzuela to be working in the lobby, and that it

was not a good combination to have electricians working in the same area where

the cleaning person was mopping.

Corral also testified that she did not have the authority to change

Valenzuela's schedule, although she did have the authority to ask her not to be in

a certain area at a certain time such as asking her not to clean the public area

when it was getting close to the time the building opened or not to be in an area

of the building if there were workmen in it.  She also somewhat contradictorily

testified that she most likely had the authority to tell Valenzuela to come to work

in the afternoon instead of the morning.

She also testified that on the morning of the accident she did not know

where Valenzuela was working and did not think to tell her about Morris and his

crew, that although she knew that Valenzuela cleaned the lobby she did not

believe that she had ever seen her mopping the lobby and thus had never seen

her put out any warning signs after mopping.  She further testified that the

building had surveillance cameras, including one in the lobby, and that she knew

that the cameras were operational because there was a screen in the manager's

office.

(6) Marc McClenahan

Marc McClenahan, a SSA employee who formerly was the manager of the

Casa Grande office, testified that the SSA did not provide Valenzuela with any

directives in terms of how she should mop the floor, that he could tell her to stop doing something if he thought she was jeopardizing the safety of SSA employees or others on the premises and that he could tell her to leave if she continued in an unsafe activity, that as the office manager he had the ability to determine when to schedule contractors, that it would be a bad mix to have contractors working in the same area at the same time Valenzuela was working there, that he did not recall ever scheduling anybody to do any type of maintenance work in the building while Valenzuela was cleaning, and that he would have told Valenzuela not to mop in the area where the contractors were working or to skip mopping altogether.

(7) Other

The United States asserts, and the plaintiffs admit, that the lessor carried an insurance policy with a limit of $1 million that provided coverage for any negligent acts or omissions by its employees in performing the maintenance and janitorial services for the leased building.

Discussion

A. The United States' Supervision of Contractor

The plaintiffs allege in the complaint that the United States was responsible for ensuring the maintenance and safety of the SSA building and was negligent, in part, by allowing janitorial personnel to clean the floor while Morris was working in the building, by permitting water to collect and remain on the floor where Morris was walking, and by failing to place warning signs and/or cones on the wet floor. In its pending motion, the United States, without contravention by the plaintiffs, characterize the complaint as alleging, at least in part, that the United States is vicariously liable for the allegedly negligent actions of Rachel Valenzuela.

1    The United States has moved to dismiss the entirety of the complaint for

2  lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1) on the ground

3  that the action is barred by the "independent contractor" exception to the FTCA.[6]

4  Although the plaintiffs have the burden of persuading the Court that it has subject

5  matter jurisdiction under the FTCA's general waiver of sovereign immunity, the

6  United States bears the burden of proving the applicability of one of the specified

7  exceptions to the FTCA's general waiver of immunity. Senger v. United States,

8  103 F.3d 1437, 1444 (9th Cir.1996); Prescott v. United States, 973 F.2d 696, 702

9  (9th Cir.1992).  With a Rule 12(b)(1) motion, the Court may weigh the evidence to

10  determine whether it has jurisdiction.  Autrey v. United States, 424 F.3d 944, 956

11  (9th Cir. 2005).

12    Under the FTCA's limited waiver of sovereign immunity, the United States

13  is liable in the same manner and to the same extent as a private party in like

14  circumstances for certain torts of federal employees acting within the scope of

15  their employment, in accordance with the law of the place where the act or

16  omission occurred. 28 U.S.C. § 1346(b)(1); Autery, 424 F.3d at 956.  While the

17  FTCA waives sovereign immunity for negligent acts of officers and employees of

18  any federal agency, it expressly excludes government liability for negligent acts of

19  "any contractor with the United States." 28 U.S.C. § 2671.  Since the FTCA, as a

20  waiver of sovereign immunity, must be strictly construed and ambiguities resolved

21  in favor of the government, the independent contractor exception is to be broadly

---

22    [6]

23    The United States asserts in its pending motion that the plaintiffs'
     counsel has indicated that Casey Morris is no longer participating in this action
24  and will be dismissed; the plaintiffs, however, say nothing about any such
     dismissal in their response, and there has been no voluntary dismissal of Casey
25  Morris or of Count Two to date. The Court considers the pending motion as including
     both Casey Morris and Count Two.
26

1   construed. <u>Robb v. United States</u>, 80 F.3d 884, 887 (4th Cir.1996).

2       The Court concludes as a matter of law that the United States has met its

3   initial burden of proving the applicability in this case of the "independent

4   contractor" exception to FTCA liability because the undisputed evidence of record

5   establishes that the building's lease made the lessor responsible for providing all

6   janitorial services, that Rachel Valenzuela was hired by the lessor to be the

7   building's janitor, that Valenzuela was paid by the lessor, that the lessor supplied

8   all of her cleaning supplies, and that the lessor provided her with the information

9   concerning what she was required to clean.

10      The plaintiffs argue in effect that an exception to the independent

11  contractor exception applies here due to the degree of control and supervision

12  that the SSA exercised over Valenzuela's janitorial duties.  In determining

13  whether the independent contractor exception should not be applied in a given

14  case the critical test "is the existence of federal authority to control and supervise

15  the detailed physical performance and day to day operations of the contractor."

16  <u>Autery</u>, 424 F.3d at 956 (internal quotation marks omitted).

17      The plaintiffs briefly argue that the United States had substantial

18  supervision over the scheduling and performance of the janitorial services.  In

19  support, they cite to the GSA contract that they assert "listed the type of services

20  to be performed, the manner in which they are able to be performed, the

21  frequence that they are to be performed, the hours that they are to be performed,

22  that the services need to be performed while S.S.A. personnel are present, and

23  that the performance of the service will be based upon the defendant's

24  evaluation[.]"  They also argue that the SSA manager had some control over

25  Valenzuela's work hours by telling her on occasion to come to work at different

26

times, and over her work performance by having the right to tell her to stop doing something and, if necessary, telling her to leave the premises.

The Court is unpersuaded by these arguments because the record is insufficient to establish that the SSA had the "substantial supervision over the day-today operations" of Valenzuela required to change her status from being a contractor to being a federal employee for FTCA purposes.  Autery, 424 F.3d at 957.  First, the mere fact that the lease detailed the janitorial services the lessor had to provide is insufficient as a matter of law to establish government liability.  The Ninth Circuit has made it clear that "[c]ontractual provisions directing detailed performance generally do not abrogate the contractor exception.  The United States may fix specific and precise conditions to implement federal objectives without becoming liable for an independent contractor's negligence." *Id.* (Internal quotation marks omitted).  Federal courts routinely find that there is no government liability for a contractor's negligent actions where detailed building maintenance contracts are at issue.  *See e.g.,* Williams v. United States, 50 F.3d 299, 307 (4ᵗʰ Cir.1995) (In determining that the government was not liable to a plaintiff who was injured when she slipped and fell in the lobby of a building leased by the government, the court noted that the government had a comprehensive contract with the contractor that provided that the contractor was responsible for the maintenance of the building, which included ensuring that the floors were free of debris and slip-resistant, and that the government neither supervised nor controlled the day-to-day custodial duties.); Bennett v. United States, 2001 WL 417798, at \*5 (E.D.La. April 20, 2001) (In a case arising from the plaintiff's slip and fall on a recently mopped floor of a federal building, the court dismissed the action pursuant to the FTCA's independent contractor

exception because all janitorial services were contractually provided by a

contractor and the evidence failed to show that the government controlled the

detailed physical performance of the contractor's janitors.)

Second, Valezuela did not become a federal employee merely because the

SSA manager had some limited authority over her that was broadly related to

safety matters. *See* Autery, 424 F.3d at 957 (Court noted that neither standards

designed to secure federal safety objectives nor detailed regulations and

inspections convert an agent into an employee under the FTCA.) *See also*,

Pershing v. United States, 736 F.Supp. 132, 134 (W.D.Tex.1990) (Court noted

that the right of the government to order a contractor to stop work should safety

violations occur is insufficient to constitute the type of control necessary to impute

liability under the FTCA.)   What is required for liability purposes is the

government's ability to direct the "actual *performance* of the contract" on a daily

basis, Autery, 424 F.3d at 957 (emphasis in original), and while there is evidence

that the SSA manager exercised some degree of supervision over Valenzuela,

there is no evidence that the SSA manager substantially supervised how

Valenzuela actually performed her duties while cleaning the building.  For

example, Marc McClenahan, the former SSA manager, testified that the SSA did

not provide Valenzuela any directives in terms of how she should go about

mopping the floor, and the plaintiffs have not cited to any evidence to the

contrary.

B.  The United States' Nondelegable Duty

The plaintiffs very conclusorily argue that the United States is liable under

Arizona law notwithstanding the independent contractor exception because the

United States, through the SSA, had a nondelegable duty as the possessor of the

premises to keep it safe for an invitee such as Morris.  Their contention is that as

a result of that nondelegable duty, Rachel Valenzuela's employment status is

irrelevant because her tortious conduct is as if the SSA, as the land possessor,

had committed it through itself or its employees.

While the FTCA precludes the application to the United States of any state

law imposing strict liability, Laird v. Nelms, 406 U.S. 797, 804, 92 S.Ct. 1899,

1903 (1972); Bramer v. United States, 595 F.2d 1141, 1144 n.7 (9th Cir.1979), or

any state law imposing vicarious liability for the negligence of an independent

contractor, the United States is still subject to FTCA liability if its own employees

acted negligently. Logue v. United States, 412 U.S. 521, 532-33, 93 S.Ct. 2215,

2221-22 (1973); 28 U.S.C. § 1346(b).

The plaintiffs' position is based solely on § 422 of the Restatement

(Second) of Torts[7] and Ft. Lowell-NSS Limited Partnership v. Kelly, 800 P.2d 962

(Ariz.1990). The issue here is whether this aspect of Arizona's law of

nondelegable duty is applicable to the United States in light of the FTCA's limited

waiver of sovereign immunity.  The plaintiffs, however, have made no effort to

---

[7]

Restatement (Second) of Torts § 422, entitled "Work on Buildings and
Other Structures on Land", states:

A possessor of land who entrusts to an independent contractor
construction, repair or other work on the land, or on a building or
other structure upon it, is subject to the same liability as though he
had retained the work in his own hands to others on or outside of the
land for physical harm caused to them by the unsafe condition of the
structure
     (a) while the possessor has retained possession of the land
during the progress of the work, or
     (b) after he has resumed possession of the land upon its
completion.

discuss this issue notwithstanding that the Ninth Circuit recognizes that "[s]ection 2680(a) is not overridden by state tort rules[.] ... The extent of the immunity of the United States to suit is governed by section 2680(a), which cannot be preempted by state law." Camozzi v. Roland/Miller & Hope Consulting Group, 866 F.2d 287, 289 n.7 (9th Cir.1989).

The Court concludes as a matter of law that the United States cannot be subjected to liability pursuant to the § 422, the only Restatement section relied upon by the plaintiffs, as that section is a rule of vicarious liability under Arizona law. *See* Restatement (Second) of Torts, ch. 15, topic 2, introductory note, at 394 ("The rules stated in the following §§ 416-429, unlike those stated in the preceding §§ 410-415, do not rest upon any personal negligence of the employer. They are rules of vicarious liability, making the employer liable for the negligence of the independent contractor, irrespective of whether the employer has himself been at fault."); *accord*, Ft. Lowell-NSS Limited Partnership v. Kelly, 800 P.2d at 970 ("[S]ection 422 holds that a possessor of land liable to his invitees for injuries that occur while he is in possession and result from his independent contractor's negligence in performing the duties of the possessor or of the contractor. ... Although no fault of the possessor need be shown, the negligence of the independent contractor must be proven before liability may attach to the employer. "); Koepke v. Carter Hawley Hale Stores, Inc., 682 P.2d 425, 429-30 (Ariz.App.1984) (Court noted that Restatement (Second) of Torts § 422 is a rule of vicarious liability because liability under it has "as a prerequisite the showing of negligence on the part if the independent contractor. Thus, the plaintiff must show the independent contractor's negligence to invoke Restatement § 422.") *See also*, Ibrahim v. Virgin Islands Water and Power Authority, 1996 WL 493172,

at *3 (D.V.I. June 28, 1996) (Court concluded that there was no FTCA liability pursuant to § 422 of the Restatement of Torts (Second) because that section would impermissibly allow a governmental entity to be held vicariously liable for the negligence of an independent contractor.)  *See also*, <u>McGarry v. United States</u>, 549 F.2d 587 (9th Cir.1976), *cert. denied*, 434 U.S. 922 (1977) (Court concluded that the FTCA permitted government liability based on Nevada's nondelegable duty doctrine to the extent that the state law doctrine did not impose liability without fault.)

The Court concludes that the plaintiffs' complaint is based on a theory of liability made impermissible by the FTCA's independent contractor exception and is thus outside of this Court's subject matter jurisdiction.  Therefore,

IT IS ORDERED that Defendant's Motion to Dismiss (doc. #32) is granted and that this action is dismissed pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction.

IT IS FURTHER ORDERED that Defendant's Alternative Motion for Summary Judgment (doc. #32) is denied as moot.

IT IS FURTHER ORDERED that the Clerk of the Court shall enter judgment accordingly in favor of defendant United States of America.

DATED this 12th day of August, 2009.

Paul G. Rosenblatt
United States District Judge